UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
MARIA MAURO,                                            :

              Plaintiff,          :     OPINION AND ORDER

         -v.-                                 :     16 Civ. 7312 (GWG)

                                                     :

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security  :

              Defendant.         :
---------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Pro se plaintiff Maria Mauro seeks review of the Commissioner of Social Security's denial of her application for disability insurance benefits. The Commissioner now moves for judgment on the pleadings.[2] For the reasons stated below, the Commissioner's motion is granted.

I. BACKGROUND

    A. Procedural History

Ms. Mauro first applied for disability insurance benefits on May 7, 2015. See Certified Administrative Record, filed Dec. 27, 2016 (Docket # 8) ("R."), at 147-50. Her application

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017, and is substituted as defendant in this case pursuant to Federal Rule of Civil Procedure 25(d).

[2] See Notice of Motion, filed Feb. 27, 2017 (Docket # 10); Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings, filed Feb. 27, 2017 (Docket # 11) ("Comm'r Mem."); Letter from Benjamin Bochicchio, dated May 4, 2017 (Docket # 17) ("Bochicchio Letter"); Reply Memorandum of Law in Further Support of the Commissioner's Motion for Judgment on the Pleadings, dated May 25, 2017 (Docket # 18) ("Comm'r Reply"); Letter from Benjamin Bochicchio and Maria Mauro, dated June 14, 2017 (Docket # 20) ("Pl. June 14 Letter"). We adopt ECF's page numbers for plaintiff's letters, indicated as "*__".

listed a disability onset date of January 1, 2014, R. 147, 163, though she later amended the application to allege she was disabled as of December 31, 2006, R. 149.

The Social Security Administration denied her application on July 3, 2015. R. 82-92. Ms. Mauro requested a hearing before an administrative law judge ("ALJ"), R. 96, which occurred on January 7, 2016, R. 50-73. She was represented at the hearing by an attorney. See R. 94. In a written decision dated March 4, 2016, the ALJ denied Ms. Mauro's application. R. 9-21. Through her counsel, Ms. Mauro requested a review of the ALJ's decision by the Appeals Council. R. 6-8. The Appeals Council denied this request on May 17, 2016, R. 1-5, and extended her time to file a civil action until September 16, 2016, R. 22. Ms. Mauro timely filed her complaint on that date pro se. See Complaint, filed Sept. 16, 2016 (Docket # 2).

B. Medical Evidence

The Commissioner has provided a summary of the medical evidence contained in the administrative record. See Def. Mem. at 2-7. While plaintiff has submitted additional evidence in the briefing of this motion, she has not objected to this summary. Having examined the record, we adopt the Commissioner's summary as accurate and complete (with the exception of the newly-submitted evidence) for the purposes of the issues raised in this suit. We discuss all the medical evidence pertinent to the adjudication of this case in section III below.

C. The Hearing Before the ALJ

Ms. Mauro was represented at the hearing by attorney Tracy Merrick. Prior to Ms. Merrick's opening statement, the ALJ stated that "heart and issue in this case is what proof can you point to . . . before the date of last insured," which was identified as September 30, 2013. R. 54, 71. Ms. Merrick responded that the testimony and evidence would demonstrate that Ms. Mauro's cancer likely developed more than a year beforehand, and that counsel hoped that Ms.

2

Mauro's self-employment in 2014 would result in an "adjustment" of the date she was last insured. R. 55.

Ms. Mauro testified that she was born on August 27, 1958, and was 57 at the time of the hearing. R. 57. She was married and lived with her husband, with no children or other relatives in the home. Id. Her highest level of education was high school. R. 58. In 2014, she was self-employed showing part of their two-family home to prospective renters and doing the bookkeeping for the rental. Id. Prior to that she managed inventory at a liquor store, and was an administrative secretary before that. R. 58-59. She had not worked since 2014. R. 59.

On December 14, 2014, Ms. Mauro had a seizure and was hospitalized. Id. She was diagnosed with breast cancer which had spread to other parts of her body, including her skull. Id. She had some symptoms prior to her hospitalization, such as fatigue, a rash that resembled a sunburn, changes in her monthly cycles, decreased energy levels, and swelling in her arms. R. 60-61. She had not visited a doctor for treatment of these symptoms (or any symptoms) prior to December 2014. See R. 60.

Prior to her diagnosis, around the time of her date last insured, she napped once or twice a day, for "anywhere from a half hour to more than one hour," although her naps had become longer since her diagnosis and the start of her treatment. R. 64. While working at the liquor store, she had to decrease the loads she could lift and carry and began to become drowsy more often. Id. She said that prior to her diagnosis, if she did not nap, she would start to get headaches, and had trouble concentrating on multiple tasks at once. R. 64-65. She said that she started shortening her hours at the liquor store, hoping that it would help with her fatigue. R. 65. Ms. Mauro also testified that she had high cholesterol, for which a doctor recommended she take

3

medication and change her diet. R. 65-66.[3]

   D. The ALJ's Decision

The ALJ concluded that no impairment or combination of impairments existed prior to Ms. Mauro's date last insured that rendered her disabled. First, relying on Ms. Mauro's earnings record, the ALJ found that Ms. Mauro last met the insured status requirements of the Social Security Act on September 30, 2013. R. 14 (citing Certified Earnings Record, dated Jan. 7, 2016, R. 157-58). Next, the ALJ found that Ms. Mauro did not engage in substantial gainful activity from her alleged onset date of December 31, 2006, through her date last insured. Id.[4]

The ALJ found that "there is no medical evidence prior to September 30, 2013 to support a finding of disability." Id. He accepted that Ms. Mauro was not diagnosed with metastatic inflammatory breast cancer until December 2014, although "[s]he did indicate that she noticed symptoms of redness along the breast skin a year before the diagnosis." R. 15. The ALJ accorded great weight generally to the opinion of one of Ms. Mauro's treating sources, Dr. Asim Aijaz, but found that the doctor's opinion that Ms. Mauro's tumor likely started more than a year prior to diagnosis "does not support a finding of a severe impairment prior to September 30, 2013, as it is still months after her date last insured." Id. The ALJ said that "[u]nfortunately, the claimant testified that she did not seek treatment prior to her date last insured regarding breast cancer," and because her "medical sources did not have records regarding diagnosis or treatment

---

[3] Also testifying at the hearing was Spironza Destefano, a vocational expert. R. 66-73. Because her testimony is not relevant to the issues in this case, we do not discuss it further.

[4] Plaintiff objects to the alleged onset date cited by the ALJ, stating that "[t]he disability started in June of 2013." Bochicchio Letter at *1. Because advancing the onset date would not affect our review of the ALJ's decision, it is not necessary to address whether the ALJ incorrectly relied on the date in Mauro's application, see R. 149, for the alleged onset date.

of cancer" from Ms. Mauro's alleged onset date through her date last insured, the ALJ found that "there are no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment regarding cancer through the date last insured." Id. The ALJ did accept that the record reflects the claimant had high cholesterol as of September 2010, but found that "the evidence fails to show any complications that significantly limited the claimant's mental or physical ability to perform work related activities" because of this condition. Id.

The ALJ found that Ms. Mauro did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities through her date last insured. Id. The ALJ said that he considered Ms. Mauro's reported symptoms, the extent to which the symptoms were consistent with objective medical evidence and other evidence, and the opinion evidence of her medical sources. Id. The ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects" of her described symptoms "are credible but do not establish a severe impairment or a medically determinable impairment prior to her date last insured." R. 16. While medical records beginning in December 2014 supported Ms. Mauro's contemporary complaints of symptoms, the ALJ noted that records prior to September 30, 2013, showed no evidence of a medically determinable impairment save high cholesterol, which he found did not significantly limit her ability to perform basic work activities. Id.

Accordingly, the ALJ found that Ms. Mauro was not under a disability from her alleged onset date through September 30, 2013, her date last insured. R. 16-17.

II. GOVERNING STANDARDS OF LAW

    A. Scope of Judicial Review under 42 U.S.C. § 405(g)

A court reviewing a final decision by the Commissioner "is limited to determining

whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (per curiam) (citations and internal quotation marks omitted); accord Greek v. Colvin, 802 F.3d 370, 374-75 (2d Cir. 2015) (per curiam); see generally 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); accord Greek, 802 F.3d at 375; Burgess v. Astrue, 537 F.3d 117, 127-28 (2d Cir. 2008); Matthews v. Leavitt, 452 F.3d 145, 152 n.9 (2d Cir. 2006); Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam) (citation and internal quotation marks omitted). Thus, "[i]f the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists." Johnson v. Astrue, 563 F. Supp. 2d 444, 454 (S.D.N.Y. 2008) (citing Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990)). The Second Circuit has characterized the substantial evidence standard as "a very deferential standard of review — even more so than the 'clearly erroneous' standard." Brault v. Soc. Sec. Admin., Comm'r, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam). "The substantial evidence standard means once an ALJ finds facts, [a court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." Id. (emphasis in original) (citations

6

and internal quotation marks omitted). "The role of the reviewing court is therefore quite limited and substantial deference is to be afforded the Commissioner's decision." Johnson, 563 F. Supp. 2d at 454 (citations and internal quotation marks omitted). Importantly, it is not a reviewing court's function "to determine de novo whether [a claimant] is disabled." Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (citation and internal quotation marks omitted); accord Cage v. Comm'r of Social Sec., 692 F.3d 118, 122 (2d Cir. 2012).

B. Standard Governing Evaluations of Disability Claims by the Agency

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 423(d)(2)(A).

To evaluate a Social Security claim, the Commissioner is required to examine: "(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience." Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983) (per curiam).

Regulations issued pursuant to the Social Security Act set forth a five-step process that the Commissioner must use in evaluating a disability claim. See 20 C.F.R. § 404.1520(a)(4); see also Burgess, 537 F.3d at 120 (describing the five-step process). First, the Commissioner must

determine whether the claimant is currently engaged in any "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner must decide if the claimant has a "severe medically determinable physical or mental impairment," id. § 404.1520(a)(4)(ii), which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities," id. § 404.1520(c). Third, if the claimant's impairment is severe and is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, or is equivalent to one of the listed impairments, the claimant must be found disabled regardless of his age, education, or work experience. See id. § 404.1520(a)(4)(iii). Fourth, if the claimant's impairment is not listed and is not equal to one of the listed impairments, the Commissioner must review the claimant's RFC to determine if the claimant is able to do work he or she has done in the past, i.e., "past relevant work." Id. § 404.1520(a)(4)(iv). If the claimant is able to do such work, he or she is not disabled. Id. Finally, if the claimant is unable to perform past relevant work, the Commissioner must decide if the claimant's RFC permits the claimant to do other work. Id. § 404.1520(a)(4)(v). If the claimant cannot perform other work, he or she will be deemed disabled. Id. The claimant bears the burden of proof on all steps except the final one — that is, proving that there is other work the claimant can perform. See Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009) (per curiam).

III. DISCUSSION

We construe Ms. Mauro's papers as arguing that the ALJ's decision was not supported by substantial evidence. We begin by discussing the question of Ms. Mauro's last date insured, although it was not mentioned in her filings.

A. Last Date Insured

"To be eligible for disability benefits under Title II of the Act, a claimant must have been

insured within the meaning of 42 U.S.C. § 423(c) at the onset date of his or her disability . . . ." Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Once a person gains fully insured status — as defined in 42 U.S.C. § 414 — a person is "insured for disability insurance benefits in any month if . . . [s]he had not less than 20 quarters of coverage during the 40-quarter period which ends with the quarter in which such month occurred." 42 U.S.C. § 423(c)(1); accord Collier v. Barnhart, 473 F.3d 444, 447 (2d Cir. 2007). The regulations explain that an applicant who is not blind (as defined in the statute) and did not become disabled or have a period of disability before age 31 must meet this 20/40 requirement to maintain insured status. 20 C.F.R. § 404.130.

The ALJ's conclusion that Ms. Mauro's last date insured was September 30, 2013, is supported by substantial evidence. Ms. Mauro reported that she worked as a senior administrative assistant from 1999 to 2005, as a retail store manager at a liquor store from 2005 to 2011, and was self employed as a management assistant and bookkeeper in 2014. See Claimant's Work Background, R. 242. Earnings records and earlier reports reflect that she stopped working at the liquor store in 2008. R. 156, 235.

The record contains a certified earnings record demonstrating that Ms. Mauro consistently worked — and earned qualifying coverage each quarter — through the third quarter of 2008. R. 157-58. This earnings record then reflects no quarters of coverage for the subsequent 21 quarters, from the fourth quarter of 2008 to the first quarter of 2014. Id. Thus, after the quarter ending September 30, 2013, Ms. Mauro no longer met the 20/40 test. See 42 U.S.C. § 423(c)(1); 20 C.F.R. § 404.130(b). Even crediting her three quarters of work in 2014, she never requalified for benefits under this rule because at the end of the third quarter of 2014 Ms. Mauro had worked in only 19 of the previous 40 quarters. See R. 158.

Accordingly, the finding that Ms. Mauro's date last insured was September 30, 2013, is

supported by substantial evidence.

B.  Whether Claimant was Disabled Prior to September 30, 2013

Ms. Mauro is not entitled to benefits unless she became disabled prior to her last date insured.  See Arnone v. Bowen, 882 F.2d 34, 38 (2d Cir. 1989).  The ALJ found that Ms. Mauro did not suffer from a medically determinable impairment prior to September 30, 2013.  R. 14-15.  The ALJ's conclusion is supported by substantial evidence because Ms. Mauro suffered no symptoms prior to her hospitalization in December 2014 other than fatigue, a sunburn-like rash, changes in her monthly cycles, and swelling in her arms.  R. 60.  There is no evidence of medical treatment between October 2011 and her hospitalization in December 2014.  An examination in 2011 noted her prior medical history as "unremarkable," with no major signs of risk or impairing disease.  R. 348.  Hospital records from 2014 suggest that Ms. Mauro had not sought treatment of any kind during the 18 months prior to her hospitalization.  See R. 306.  Thus, we agree with the ALJ's finding that Ms. Mauro's "medical sources did not have records regarding diagnosis or treatment of cancer" from her alleged onset date through her date last insured.  R. 15.

Other than Mr. Bochicchio's statement that he observed the symptoms of a rash, swelling, and fatigue in June of 2013, see Bochicchio Letter at *2, Ms. Mauro's filings in response to the Government's motion focus on her current condition, see id. at *2-*3; Pl. June 14 Letter at *1-*2.  But when a claimant does not show that a currently existing condition rendered her disabled prior to her date last insured, benefits must be denied.  See, e.g., Flanigan v. Colvin, 21 F. Supp. 3d 285, 302 (S.D.N.Y. 2014) (denying benefits where "at best the evidence show[ed] that [plaintiff] experienced progressively worsening symptoms that eventually became disabling" after his date last insured); see also Behling v. Comm'r of Soc. Sec., 369 F. App'x 292, 294 (2d Cir. 2010) (summary order) (claimant's current condition not relevant because she

10

"was required to demonstrate that she was disabled as of the date on which she was last insured" and "[a]ny new impairments are not relevant") (citations omitted); Gonzalez ex rel. Guzman v. Sec'y of U.S. Dep't of Health & Human Servs., 360 F. App'x 240, 243 (2d Cir. 2010) (summary order) (although record contained evidence of ailments prior to claimant's date last insured, "at no point [was] there any documented medical determination" that demonstrated he was per se disabled prior to that date).

Ms. Mauro has submitted letters from physicians as part of her responsive papers. See Letter from Asim Aijaz, M.D., dated Aug. 3, 2015 (attached as Ex. I to Bochicchio Letter); Letter from Cynthia Ligenza, M.D., dated Aug. 1, 2016 (attached as Ex. II to Bochicchio Letter) ("Ligenza Letter"); Letter from Julia Schaefer-Cutillo, M.D., dated Oct. 27, 2016 (attached as Ex. III to Bochicchio Letter) ("Schaefer-Cutillo Letter"); Letter from Michael Gallagher, M.D., dated May 31, 2017 (attached to Pl. June 14 Letter) ("Gallagher Letter"). We may remand a case for consideration of such evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "Material" means "both relevant to the claimant's condition during the time period for which benefits were denied and probative." Lisa v. Sec'y of Health & Human Servs., 940 F.2d 40, 43 (2d Cir. 1991) (citations and internal quotation marks omitted). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." Id. (citations and internal quotation marks omitted).

The letters submitted by Ms. Mauro consist of (1) an August 3, 2015, letter from Dr. Aijaz; (2) an August 1, 2016, letter from Dr. Cynthia Ligenza; (3) an October 27, 2016, letter from Dr. Julia Schaefer-Cutillo, who has been Ms. Mauro's doctor at Hudson Valley Cancer

Center "since her doctor left in July of 2016," Schaefer-Cutillo Letter; and (4) a May 31, 2017, letter from Dr. Michael Gallagher of the New York Presbyterian Hudson Valley Hospital Radiation Oncology Department. None of these letters reflect a reasonable possibility that they could affect the ALJ's decision. Nor are they probative.

The letters all address the question of whether or not cancer was present prior to September 30, 2013. This evidence is not "material" because the issue before the ALJ was not whether cancer was present prior to the last date insured but rather whether the cancer rendered her <u>unable to work</u> at that time. <u>See</u> <u>generally</u> 42 U.S.C. § 423(d)(1)(A) (defining "disability" to mean in relevant part the "<u>inability to engage in any substantial gainful activity by reason of any medically determinable physical . . . impairment</u>" (emphasis added)). Indeed, the letter from Dr. Aijaz was already part of the record. In this letter, Dr. Aijaz states that "it is likely that the patient's tumor started back more than a year" prior to diagnosis. R. 512. The ALJ recognized that Dr. Aijaz had rendered this opinion. R. 15. But the ALJ correctly focused not on the question of whether cancer was present but rather on whether there was medical evidence that Ms. Mauro was <u>unable to work</u> prior to September 30, 2013, due to her medical condition. R. 15-16.

The three remaining letters similarly speak only to the likelihood that the cancer was present, not to its effect on Ms. Mauro's ability to work. Thus, the letter from Dr. Ligenza notes only that the tumor "must have been present" prior to the last date insured. <u>See</u> Ligenza Letter. The only physical symptom Dr. Ligenza mentions as occurring prior to the last date insured is "breast erythema" (that is, reddening and irritation). <u>Id.</u>; <u>see also</u> <u>Steadman's Medical Dictionary</u> 615 (27 ed. 2000) (defining erythema as "[r]edness due to capillary dilation"). Dr. Gallagher too stated only that cancer "had been present" before the last date insured and

identified the only physical symptom as "redness of [Ms. Mauro's] breast back in August of 2013." See Gallagher Letter. Dr. Schaefer-Cutillo similarly states only that cancer was "very likely . . . present" prior to the last date insured. Schaefer-Cutillo Letter.

Ms. Mauro's submissions also state that her husband, Mr. Bochicchio, was not permitted to attend or testify at the hearing. Bochicchio Letter at *2; Pl. June 14 Letter at *1. We begin by noting that Ms. Mauro was represented by an attorney and there is nothing in the record to suggest that the attorney sought to call additional witnesses. In any case, it appears the only testimony Mr. Bochicchio would have offered is that there was a rash on Ms. Mauro's breast and swelling of her upper extremities, and that she experienced fatigue after swimming at the beach. See Bochicchio Letter at *2. Putting aside the issue of whether Ms. Mauro has shown "good cause" for not presenting Mr. Bochicchio's testimony earlier, the testimony duplicates Ms. Mauro's testimony, which the ALJ did not discredit. See R. 16 ("[C]laimant's statements concerning the intensity, persistence and limiting effects of these symptoms are credible . . . ."). Thus, we cannot find that Mr. Bochicchio's testimony would have affected the ALJ's decision.

In sum, because there is no "reasonable possibility that the new evidence would have influenced" the ALJ to decide that Ms. Mauro was actually disabled before September 30, 2013, Lisa, 940 F.2d at 43, remand to the Commission for further consideration of Ms. Mauro's application would not be proper.

We close by repeating the Commissioner's suggestion in her reply brief: "[i]n light of the assertion that plaintiff currently has limited income, she may be eligible for Supplemental Security Income benefits," which do not have an insured status requirement. Comm'r Reply at 5 n.3 (citing 42 U.S.C. § 1381 et seq.). To seek such benefits, of course, Ms. Mauro would need to make a new application.

IV. CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Docket # 10) is granted. The Clerk is requested to enter judgment in favor of the Commissioner and to close the case.

SO ORDERED.

Dated: September 18, 2017
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to:

Maria Mauro
172 Main Street
Cold Spring, NY 10516